IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-01886-GPG-NRN

Southern Ute Indian Tribe, a federally recognized Indian Tribe, and Ute Mountain Ute Tribe, a federally recognized Indian Tribe,

    Plaintiffs,

v.

Jared Polis, in his official capacity as Governor of Colorado, and Christopher Schroder, in his official capacity as Director of the Colorado Division of Gaming,

    Defendants.

## MOTION TO DISMISS

Defendants, Colorado Governor Jared Polis (the "Governor") and Director of the Colorado Division of Gaming Christopher Schroder (the "Gaming Director"), through the Colorado Attorney General's Office and undersigned counsel, hereby move to dismiss the Amended Complaint [ECF no. 22]. In support, Defendants state as follows:

**Certificate of Conferral under Civ. Practice Standard 7.1B**

Undersigned certify that they conferred in good faith with counsel for Plaintiffs, who oppose dismissal. Neither side views this as a curable pleading deficiency.

### INTRODUCTION

This case involves a dispute between the State of Colorado (the "State") and the Southern Ute Indian Tribe and the Ute Mountain Ute Indian Tribe (collectively, the "Tribes") regarding whether the State may regulate the Tribes' "off-Reservation sports

1

betting activity"—i.e., their acceptance of wagers for online sports betting from Colorado betters located outside the Tribes' Reservation boundaries. The Tribes seek injunctive and declaratory relief ensuring that they have exclusive jurisdiction in this area, which they assert is consistent with the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 *et seq*. ("IGRA"), the 1995 Gaming Compacts between the Tribes and the State (collectively, the "Compacts"), and Colorado's Sports Betting Act, C.R.S. §§ 44-30-1501 *et seq*. The Tribes' position is substantively incorrect. However, this Court need not address the merits of this case because it lacks subject matter jurisdiction over the Tribes' claims and the Tribes fail to state a claim.

First, this Court lacks subject matter jurisdiction because state officers like the Governor and Gaming Director are entitled to Eleventh Amendment immunity from a suit brought by the Tribes. No relevant exceptions apply here. *Ex parte Young* does not apply where special sovereignty interests of the State are implicated. In addition, the Tribes cannot demonstrate that State officials have taken any adverse action against them. To the contrary, the Tribes' allegations demonstrate an ongoing effort by the State to engage in meaningful dialogue with the Tribes to <u>avoid</u> any such conflict. Also, there is no existing case or controversy that is ripe for this Court to resolve.

Alternatively, the Tribes have failed to state a claim under IGRA or the Compacts. IGRA provides a cause of action to tribes in only two circumstances: first, where a state has failed to engage in compact negotiations in good faith; and second, where a tribe seeks to enjoin illegal gaming on Indian lands. Neither of these

2

circumstances exists here. The Compacts do not provide any additional remedy, apart from a right to demand arbitration that the Tribes have not invoked. Further, given the length of time that the Tribes have known about the State's position, the claims in this case are outside of the applicable statute of limitations.

In sum, Defendants respectfully request dismissal with prejudice.

## LEGAL STANDARD

Fed. R. Civ. P. 12(b)(1). A defendant may move to dismiss a complaint for lack of subject-matter jurisdiction under Fed. R. Civ. P. ("Rule") 12(b)(1). Motions to dismiss based on Eleventh Amendment sovereign immunity are properly classified as challenges to a court's subject matter jurisdiction under Rule 12(b)(1). *See Elephant Butte Irrigation Dist. of N.M. v. Dep't of Interior*, 160 F.3d 602, 607 (10th Cir. 1998); *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). Whether a claim is ripe, and thus justiciable under Article III, is also a matter of the court's subject matter jurisdiction. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1498-99 (10th Cir. 1995).

When, as here, the motion to dismiss asserts that the allegations in a complaint are insufficient on their face to invoke federal jurisdiction, a district court accepts any well-pled allegations as true yet "need not accept … unsupported conclusory allegations." *See Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227, n.1 (10th Cir. 2010). The burden of establishing subject matter jurisdiction is on the party asserting the court's jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974); *Lindstrom v. United States*, 510 F.3d 1191, 1193 (10th Cir. 2007).

If a court lacks jurisdiction, it "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso*, 495 F.2d at 909.

<u>Fed. R. Civ. P. 12(b)(6).</u> A defendant may also move to dismiss a complaint for failure to state a claim under Rule 12(b)(6). To survive a motion to dismiss, a party's well-pled allegations must "plausibly" state a legal claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A court must "assume the truth of the material facts as alleged in the complaint." *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999) (quoting *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 325 (1991)). But a court need not accept legal conclusions. *Iqbal*, 556 U.S. at 678.

Failure to state a claim includes failure to plead under a valid cause of action. *See, e.g., Kerr v. Polis*, 20 F.4th 686, 692 (10th Cir. 2021) ("[W]e conclude the political subdivisions have not identified any constitutional or statutory provisions that authorize them to bring the present cause of action. Therefore, we affirm the dismissal of the Plaintiffs' complaint for the alternate grounds of failure to state a claim …."); *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla.*, 63 F.3d 1030, 1048 (11th Cir. 1995) ("[B]ecause IGRA provides Tamiami no right of action, Tamiami has failed to state a claim for relief."). In addition, "[a] statute of limitations defense may be appropriately resolved on a Rule 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished." *Herrera v. City of*

*Espanola*, 32 F.4th 980, 991 (10th Cir. 2022) (quotation marks and citation omitted). Dismissal with prejudice may be appropriate under Rule 12(b)(6) if amendment would be futile. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

## ARGUMENT

### I.     This Court lacks subject matter jurisdiction.

#### A.     Defendants are immune from suit.

This Court lacks subject matter jurisdiction because the Governor and Gaming Director are State officers entitled to Eleventh Amendment immunity.

The Eleventh Amendment of the U.S. Constitution bars claims against states and state officials in federal court. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). The U.S. Supreme Court has extended Eleventh Amendment immunity to claims by an Indian tribe against a state, including those arising under IGRA. *See, e.g., Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996) ("*Seminole Tribe*"). In *Seminole Tribe*, the Supreme Court acknowledged Congress's clear—although invalid—intent to abrogate states' immunity for claims under IGRA. 517 U.S. at 57 (citing 25 U.S.C. § 2710(d)(7) (providing that federal courts shall have jurisdiction over three types of cases involving Indian gaming)). Nevertheless, the Supreme Court held that Congress lacked the authority under the Indian Commerce Clause to waive the states' Eleventh Amendment immunity. *Id.* at 72-73 ("…Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction."). The Tenth Circuit further extended this holding in a 2017 decision, *New Mexico v. Department of Interior*, 854 F.3d 1207 (10th

Cir. 2017), concluding that the U.S. Department of Interior did not have authority to issue regulations providing an alternative remedial scheme when a state asserts sovereign immunity as a defense. As a result, the State and its officials retain Eleventh Amendment immunity from claims by tribes arising under IGRA.

The U.S. Supreme Court has separately held that Indian tribes may not rely on *Ex parte Young*'s exception to Eleventh Amendment sovereign immunity if doing so would implicate a state's special sovereignty interests. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997) ("*Coeur d'Alene Tribe*"). In *Coeur d'Alene Tribe*, the Supreme Court held that a suit "seeking, in effect, a determination that the lands in question are not even within the regulatory jurisdiction of the State" would "bar the State's principal officers from exercising their governmental powers and authority over the disputed lands and waters." *Id.* at 282. As such, *Ex parte Young* could not be applied. Similarly, here, the relief the Tribes seek—a determination that their "off-Reservation sports betting activity," Am. Compl. ¶ 90, is not within the regulatory jurisdiction of the State—would bar the officials responsible for regulating sports betting activity in Colorado from exercising their authority. As the Tribes argue that they have a sovereignty interest in their right to control gaming on Indian lands, so too does the State possess a sovereignty interest in the ability to regulate sports betting in Colorado.[1]

In addition, the Amended Complaint fails to meet other threshold conditions for

---

[1] The General Assembly has declared that "Public confidence and trust can be maintained only by strict regulation of sports betting." C.R.S. § 44-30-102(3)(e).

the *Ex parte Young* exception to apply. Under *Ex parte Young*, the state official named must have "a particular duty to enforce the statute" and "a demonstrated willingness to exercise that duty." *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021). The Amended Complaint does not plausibly allege these conditions with respect to either Defendant. Although Plaintiffs pled in a conclusory fashion that the Governor has directed the allegedly improper regulatory activity of the Division of Gaming, *e.g.*, Am. Compl. ¶¶ 9 and 43, his supervisory power as the head of the Executive branch itself is not sufficient to meet the *Ex parte Young* threshold. *Accord Tohono O'odham Nation v. Ducey*, 130 F. Supp. 3d 1301, 1311 (D. Ariz. 2015) (finding the governor's influence on executive branch officers insufficient for *Ex parte Young* to apply); *see also Hendrickson*, 992 F.3d at 967 ("general enforcement power… does not suffice for *Ex parte Young*").[2] And while the Division of Gaming is tasked with regulating sports betting under Colorado law, *see* C.R.S. § 44-30-202, the Tribes have not alleged any specific actions taken by Gaming Director Schroder. *See generally*, Am. Compl.

Moreover, the Tribes have not plausibly alleged any ongoing enforcement in violation of federal law. *See generally,* Am. Compl.; Exs; *cf. Verizon Md. Inc. v. PSC*, 535 U.S. 635, 645 (2002) (*Ex parte Young* only applies to enjoin an ongoing violation of federal law). The Tribes seem to assert that the State's position regarding the legality of

---

[2] Under Colorado law as relevant here, the Governor is authorized to enter into compacts with the Colorado Limited Gaming Control Commission's input. C.R.S. § 44-31-101. But the failure to negotiate a compact cannot form the basis of suit under *Ex parte Young*. *Seminole Tribe*, 517 U.S. at 74-76.

tribal sports betting <u>outside</u> Reservation boundaries amounted to improper regulation. *See generally,* Am. Compl.[3] To the contrary, the allegations in and exhibits to the Amended Complaint demonstrate an ongoing effort by the State to engage in meaningful dialogue with the Tribes to <u>avoid</u> any such conflict. *See, e.g.,* Am. Compl. ¶¶ 47-49, 54-57, 61, 70-71, 75-76; Exs. C, F, G, J. In fact, even the letters to non-tribal sportsbook operators attached to the Tribes' Amended Complaint, which are from the State's <u>prior</u> Gaming Director, indicate a desire to avoid any enforcement action. Am. Compl., Ex. H; Ex. I. Thus, any action by this Court would be purely advisory and outside the scope of the *Ex parte Young* exception to Eleventh Amendment immunity.

*Ex parte Young* also does not apply to questions of state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). As noted in the Amended Complaint, the Tribes seek a determination that their proposed gaming model is consistent with state gaming law. *See, e.g.,* Am. Compl. ¶ 90. The *Ex parte Young* exception does not permit a federal court to instruct Defendants on how to interpret and follow Colorado law. *Pennhurst*, 465 U.S. at 106.

In sum, Eleventh Amendment sovereign immunity bars the Tribes' claims here.

### B. There is no ripe case or controversy.

Next, even if the Tribes' claims survived an immunity defense against one or both

---

[3] The exhibits to the Amended Complaint make clear that the State has always recognized the Tribes' ability within the Compacts to offer sports betting on Tribal lands. *See, e.g.,* Am. Compl., Ex. F at 4; Ex. H; Ex. I.

Defendants, they do not present a justiciable controversy. For a federal court to properly exercise jurisdiction, the claims must present a "case" or "controversy" that is justiciable under Article III. *See Flast v. Cohen*, 392 U.S. 83, 94-95 (1968). The standard for a declaratory judgment action is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality…." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). The question of ripeness also "bears on a court's subject matter jurisdiction under the case or controversy clause of Article III …." *Gonzales*, 64 F.3d at 1498-99. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotations omitted); *see also Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 479 (1990) (plaintiff must demonstrate a "specific live grievance" not just an "abstract disagreement").

Here, there is no substantial controversy of sufficient immediacy and reality to satisfy Article III. As mentioned above, the Amended Complaint does not allege any specific actions taken by Defendants against the Tribes in violation of federal law. Rather, the claims amount to a disagreement between the State and the Tribes as to which government may lawfully regulate the Tribes' off-Reservation sports betting activity. At this point, that question is purely theoretical. The Southern Ute Indian Tribe by its own admission voluntarily closed its Sky Ute SportsBook Betting Enterprise in July 2023. Am. Compl. ¶ 79. The Ute Mountain Ute Tribe never actually operated a

sportsbook. *Id*. ¶ 60. Although the Tribes assert an interest in resuming (or, in the case of the Ute Mountain Ute Tribe, initiating) statewide sports betting activities, *id*. ¶¶ 79, 85, 97, 98, that interest is not justiciable because it "'involves uncertain or contingent future events[.]'" *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1097 (10th Cir. 2006) (quoting *Gonzales*, 64 F.3d at 1499). Further, according to the Amended Complaint, the Southern Ute Indian Tribe's vendor "did not ultimately succumb" to pressure from the State, Am. Compl. ¶¶ 12 ,79, and thus any claims premised on the prior letter sent to the Tribes' sports betting operators are not ripe. *Accord Tohono O'odham*, 130 F. Supp. 3d at 1314 (finding claim premised on letters sent to vendors not ripe where no vendors indicated that they would not do business with the tribe as a result of the state official's actions). Thus, the Tribes cannot demonstrate any justiciable controversy stemming from the State's alleged acts and omissions, and the case is not ripe for adjudication.

## II. The Tribes have failed to state a claim.

Alternatively, the Tribes have failed to state a claim because neither IGRA nor the Compacts provide relief in the circumstances presented here, and the Tribes bring their claims outside of the applicable statute of limitations. Because the Tribes cannot cure those defects by further amending the Complaint, it is appropriate for this Court to order dismissal with prejudice. *Brereton*, 434 F.3d at 1219.

### A. The Tribes have no cause of action under IGRA.

"Congress expressly provided various causes of action in favor of tribes, states, and the federal government for certain violations of IGRA." *Hartman v. Kickapoo Tribe*

*Gaming Comm'n*, 319 F.3d 1230, 1232 (10th Cir. 2003) (citing 25 U.S.C. §§ 2710, 2711, 2714); *see also Stockbridge-Munsee Cmty. v. Wisconsin*, 922 F.3d 818, 822 (7th Cir. 2019) (discussing that IGRA creates three specific causes of action and citing 25 U.S.C. § 2710(d)(7)(A)(i) to (iii)). IGRA provides only two causes of action that may be brought by tribes: First, where a state has failed to enter into compact negotiations or to conduct such negotiations in good faith, and second, where a tribe seeks to enjoin Class III gaming activity conducted on Indian lands in violation of a compact. 25 U.S.C. § 2710(d)(7)(A)(i)-(ii).[4] Neither of these conditions is met factually or legally here.

With respect to compact negotiations, the Tribes "seek[] an order enjoining continuing bad faith interpretations by Governor Polis." Am. Compl. ¶¶ 14, 90. Notably, however, the Tribes do not assert "that Colorado has engaged in bad faith negotiations around drafting a new compact or modifying the existing compacts." *Id*. ¶ 88. Indeed, in addition to being prohibited by *Seminole Tribe*, *supra* n.2, any such allegation would be inconsistent with the Tribes' demand to enforce the <u>existing</u> Compacts, which they assert authorize state-wide tribal sports betting as written. *E.g.,* Am. Compl. ¶¶ 3-4, 6. As such, the allegations in the Amended Complaint do not create a plausible claim that the State failed to engage in compact negotiations or to do so in good faith.

Next, there are no allegations or other indications in the Amended Complaint that the Tribes are seeking to enjoin a Class III gaming activity on Indian lands, let alone that

---

[4] IGRA's third cause of action, which may may be initiated by the Secretary of the Interior, is inapplicable here. 25 U.S.C. § 2710(d)(7)(A)(iii).

11

any such gaming is currently being conducted in violation of the Compacts. *Cf.* 25 U.S.C. § 2710(d)(7)(A)(ii). The Tribes seek an order to allow off-Reservation gaming, not to enjoin on-Reservation gaming.

"[W]hen legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." *Hartman*, 319 F.3d at 1232-33 (quoting *Nat'l R.R. Passenger Corp. v. Nat'l Assoc. of R.R. Passengers*, 414 U.S. 453, 458 (1974)). Given that the Tribes have not asserted one of the two causes of action that are provided for them in IGRA, they are prohibited from seeking any other form of relief under IGRA. *Accord Florida v. Seminole Tribe of Fla.*, 181 F.3d 1237, 1248-49 (11th Cir. 1999) ("The existence of these various express remedies is a clear signal that we should not read into IGRA the implied right of action asserted by the State."); *Hein v. Capitan Grande Band of Diegueno Mission Indians*, 201 F.3d 1256, 1260 (9th Cir. 2000) ("[W]here IGRA creates a private cause of action, it does so explicitly."); *Wisconsin v. Ho-Chunk Nation*, 463 F.3d 655, 661 (7th Cir. 2006), *abrogated on other grounds by Vaden v. Discover Bank*, 556 U.S. 49 (2009) ("The question here is: since the IGRA enables and regulates contracts between tribes and the states, does any dispute arising from the resulting compact present a question under the IGRA? We think not."). Specifically, IGRA creates no right of action for a tribe's claim that a state seeks to regulate gaming in a manner that allegedly exceeds the authority in IGRA and their compact. *Accord Tohono O'odham*, 130 F.Supp.3d at 1315 ("IGRA creates no private right of action for the claim asserted by the Nation in

this case.").[5] Therefore, the Tribes have no cause of action under IGRA.

### B. The Tribes have no remedy under the Compacts.

Next, the Compacts do not permit this Court to issue a declaratory judgment or enjoin the State's alleged efforts to regulate tribal gaming outside of Indian lands. IGRA states that a compact may include provisions pertaining to remedies for breach of contract. 25 U.S.C. § 2710(d)(3)(C)(v). Both Compacts provide that either Party can demand arbitration "[i]n addition to any remedies provided in the Act[,] or otherwise available under Federal Law." Am. Compl., Ex. A-1 at 31 (internal p. 29); Ex. A-2 at 40 (internal p. 34). The Tribes have not demanded arbitration or identified any other remedies available under federal law. In addition, as discussed above, Congress did not abrogate the states' sovereign immunity in IGRA. The Ute Mountain Ute Tribe's Compact contains only a limited waiver of the State's immunity "for the limited purpose of enforcing the terms of this Compact." Am. Compl., Ex. A-2 at 48 (internal p. 42). However, the Compacts pertain only to gaming on Indian lands.[6] Here, the Tribes seek

---

[5] While the Arizona District Court in *Tohono O'odham* approved of an equitable cause of action to enjoin a state regulation that is preempted by federal law, such a claim is not plausibly alleged by the Amended Complaint. *Accord Pueblo of Pojoaque v. State*, 233 F. Supp. 3d 1021, 1136-37 (D.N.M. 2017) (discussing equitable claim for preemption). Like in *Pueblo of Pojoaque*, the Tribes here do not state in the Amended Complaint that their claims are based on the Court's inherent equitable jurisdiction, but rather the Tribes directly assert that the claims are based on IGRA and the Compact. *Id.* at 1136-37; *cf.* Am. Compl. at 17-18. Also, an equitable right to enjoin state regulation that is preempted by IGRA would be inapplicable here because IGRA pertains only to gaming on Indian lands. *See Mich. v. Bay Mills Indian Cmty.*, 572 U.S. 782, 794-95 (2014).

[6] *See, e.g.*, Compl. Ex. A-1 § 1 ("The purpose of this Compact is to establish the terms governing the conduct of Class III Gaming on the Southern Ute Indian Reservation.");

authority to accept sports betting wagers placed outside their Reservations without State regulation, and thus the Compacts do not plausibly provide relief.

### C.    The claims are untimely.

In addition, given the length of time that the Tribes have known about the State's position, the Tribes' claims are outside of the applicable statute of limitations.

Because IGRA does not provide a specific statute of limitations, the applicable Colorado statute of limitations would apply to the Tribes' claims. *See Pauma Band of Luiseno Mission Indians of Pauma & Yuima Reservation v. California*, No. 16-CV-01713-BAS-JMA, 2017 WL 1166426, at *5 (S.D. Cal. Mar. 29, 2017) (citing *Papa v. United States*, 281 F.3d 1004, 1011-12 (9th Cir. 2002)) ("IGRA, however, does not expressly provide a statute of limitations period. *See* 25 U.S.C. § 2710(d)(7). When a federal statute does not expressly supply a statute of limitations period, state statutes of limitations generally govern actions in federal courts."); *see also Stockbridge-Munsee Cmty. v. Wisconsin*, 299 F. Supp. 3d 1026, 1030-31 (W.D. Wis. 2017), *aff'd*, 922 F.3d 818 (7th Cir. 2019) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158

---

*id.* § 2(i) ("'Gaming Facility' means the buildings, rooms or areas in which Tribal Gaming is conducted."); *id.* § 2(w) ("'Tribal Gaming' means any gaming that is conducted on the Reservation pursuant to this Compact."); *id.* § 3(c) ("The Tribe may establish one or more Gaming Facilities on the Reservation."); Compl. Ex. A-2 at 2 (purposes and objectives include "1. To provide for the regulation of Class III Gaming on Indian Lands consistent with the Act"); *id.* § 2.G. ("'Gaming Facility or Facilities' means the room or rooms on Indian Lands in which Class III gaming as authorized by this Compact is conducted."); *id.* § 3.A. ("The Tribal Gaming Operation may operate in its Gaming Facilities, subject to the provisions of this Compact...").

(1983)). Even though equitable claims such as injunctions are not subject to statutes of limitations defenses, they are subject to laches and "absent extraordinary circumstances, courts will analyze a laches defense by analogy to the statute of limitations applicable to an action at law of like character." *In re Behrends*, No. AP 14-1377 EEB, 2017 WL 4513071, at *24 (Bankr. D. Colo. Apr. 10, 2017) (citations omitted); *see also Grynberg v. Total S.A.*, 538 F.3d 1336, 1354 (10th Cir. 2008).

Colorado has a three-year statute of limitations applicable to contract actions. C.R.S. § 13-80-101(1)(a). This would be the most closely analogous state-law statute of limitations for claims arising under the Compacts. *See Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1556 (10th Cir. 1997) (citing *Texas v. New Mexico*, 482 U.S. 124, 128 (1987)) ("A compact is a form of contract."); *Stockbridge-Munsee Cmty.*, 922 F.3d at 823-24 ("We cannot see a good reason why Wisconsin's six-year period of limitations in contract law should not apply to suits based on this [compact]…"). In addition, Colorado has a two-year general statute of limitations applicable to "[a]ll actions upon liability created by a federal statute where no period of limitation is provided in said federal statute." C.R.S. § 13-80-102(1)(g). This two-year general statute would be the proper statute of limitations for claims arising under IGRA.

The Tribes bring their claims outside of both windows. The prior Gaming Director sent his letters to the non-tribal sportsbook operators in June 2020. Am. Compl., Ex. H; Ex. I. According to the Amended Complaint, the State first articulated its position directly to the Tribes in April 2020, when Director Hartman "suggested for the first time that

Internet sports betting was limited to the Reservation boundaries." *Id*. ¶ 54; *see also* Am. Compl., Ex. F. The Tribes were certainly on notice as of May 2021 that the State viewed tribal receipt of sports betting wagers outside of Reservation boundaries to be subject to its jurisdiction. Am. Compl. ¶¶ 70-74; Am. Compl., Ex. G. The original Complaint here was not filed until July 9, 2024.[7] Therefore, this case was brought more than three years from the time the claim accrued. *See Newcomb v. Ingle*, 827 F.2d 675, 678 (10th Cir.1987) (federal law governs when federal cause of action accrues); *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994) ("statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action").

In sum, the Tribes' claims are untimely and must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice.

---

[7] The timing of the Tribes' Complaint seems to be based on U.S. Supreme Court's denial of *certiorari* in *W. Flagler Assocs., Ltd. v. Haaland*, 71 F.4th 1059 (D.C. Cir. 2023), *cert. denied*, 144 S.Ct. 2671 (2024). *See* Am. Compl. ¶ 31. Defendants are not aware of any rule that would extend the statute of limitations in these circumstances.

DATED: October 15, 2024.

PHILIP J. WEISER
Attorney General

s/ Lily E. Nierenberg
LILY E. NIERENBERG*
Assistant Attorney General II
Attorney for Governor Jared Polis

Colorado Department of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: 720-508-6851
Email: Lily.Nierenberg@coag.gov
*Counsel of Record

s/ Torrey Samson
TORREY SAMSON*
Senior Assistant Attorney General
Attorney for Gaming Director Christopher
  Schroder

Colorado Department of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 8th Floor
Denver, Colorado 80203
Telephone: 720-508-6344
Email:  Torrey.Samson@coag.gov
*Counsel of Record