IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-01886-GPG-NRN

Southern Ute Indian Tribe, a federally recognized Indian Tribe, and Ute Mountain Ute Tribe, a federally recognized Indian Tribe,

    Plaintiffs,

v.

Jared Polis, in his official capacity as Governor of Colorado, and Christopher Schroder, in his official capacity as Director of the Colorado Division of Gaming,

    Defendants.

## MOTION TO DISMISS SECOND AMENDED COMPLAINT

Defendants, Colorado Governor Jared Polis (the "Governor") and Director of the Colorado Division of Gaming Christopher Schroder (the "Gaming Director"), through the Colorado Attorney General's Office and undersigned counsel, hereby move to dismiss the Second Amended Complaint [ECF no. 58-1][1] and in support state as follows:

### Certificate of Conferral under Civ. Practice Standard 7.1B

Undersigned certify that they conferred in good faith with counsel for Plaintiffs, who oppose dismissal. Neither side views this as a curable pleading deficiency.

### INTRODUCTION

This case is fundamentally about a state's ability to regulate online sports betting

---

[1] The Tribes filed an updated Second Amended Complaint and exhibits with a notice of errata. ECF nos. 58 through 58-13. Defendants' references herein are to this version.

1

as well as other types of internet gaming by its residents within its jurisdictional boundaries and outside of Indian lands. By asserting that they can accept online wagers from Coloradans across the state, without needing to comply with Colorado law, the Tribes seek to undermine the State's ability to govern. Neither the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 *et seq*. ("IGRA"), nor the 1995 Gaming Compacts between the Tribes and the State (collectively, the "1995 Compacts") compel this result.

As a principal matter, this Court need not decide the merits of the litigation because Defendants are immune from suit. The limited purpose of *Ex parte Young* is to enjoin ongoing action that violates federal law. There is neither action nor violation here. Defendants, who have consistently sought to dialogue with the Tribes and have never initiated any type of enforcement action, are not acting outside the bounds of IGRA. "Everything—literally everything—in IGRA affords tools (for either state or federal officials) to regulate gaming on Indian lands, and nowhere else." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 795 (2014). This case concerns sports betting wagers that are placed by bettors located anywhere in Colorado *except* the Tribes' reservations. To be clear: the State has no interest in imposing its sports betting laws in Indian country. But it has a great interest in ensuring that its laws are enforced in areas outside the Tribes' reservations that are under the State's jurisdiction.

Additionally, and alternatively, the Tribes have failed to state a claim. None of the specific causes of action under IGRA are triggered by the matters at hand. And even if the Tribes had a pled a claim for relief under this Court's equitable authority (which they

2

did not), it would fail because there is no conflict between IGRA and state law. The Tribes' claims fare no better under the 1995 Compacts, which do not provide any available remedy. Finally, the Tribes have known the State's legal position for years, yet they did not bring this lawsuit within the applicable statute of limitations.

Defendants respectfully ask this Court to find that it lacks jurisdiction over the action and to find that the Tribes have failed to state a claim.

## LEGAL STANDARD

Fed. R. Civ. P. 12(b)(1). Motions to dismiss based on the Eleventh Amendment are properly classified as challenges to a court's subject matter jurisdiction under Fed. R. Civ. P. ("Rule") 12(b)(1). *See, e.g., Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). When, as here, the motion to dismiss asserts that the allegations in a complaint are insufficient on their face to invoke federal jurisdiction, a district court accepts any well-pled allegations as true yet "need not accept … unsupported conclusory allegations." *See Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010). The burden of establishing subject matter jurisdiction is on the party asserting it. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974); *Lindstrom v. United States*, 510 F.3d 1191, 1193 (10th Cir. 2007). A court "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso*, 495 F.2d at 909.

Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a party's well-pled allegations must "plausibly" state a legal claim for relief. *Ashcroft v.*

*Iqbal*, 556 U.S. 662 (2009). A court must "assume the truth of the material facts as alleged in the complaint." *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999) (quoting *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 325 (1991)). But a court need not accept legal conclusions. *Iqbal*, 556 U.S. at 678.

Failure to state a claim includes failure to plead under a valid cause of action. *See, e.g., Kerr v. Polis*, 20 F.4th 686, 692 (10th Cir. 2021) ("[W]e conclude the political subdivisions have not identified any constitutional or statutory provisions that authorize them to bring the present cause of action. Therefore, we affirm the dismissal of the Plaintiffs' complaint for the alternate grounds of failure to state a claim …."); *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla.*, 63 F.3d 1030, 1048 (11th Cir. 1995) ("[B]ecause IGRA provides Tamiami no right of action, Tamiami has failed to state a claim for relief."). "A statute of limitations defense may be appropriately resolved on a Rule 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished." *Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022) (quotation marks and citation omitted). Dismissal with prejudice may be appropriate under Rule 12(b)(6) if amendment would be futile. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

## ARGUMENT

### I. Defendants are immune from this suit.

The Eleventh Amendment of the U.S. Constitution bars claims against states and state officials in federal court. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

The U.S. Supreme Court has recognized that Eleventh Amendment immunity applies to claims by an Indian tribe against a state, including those arising under IGRA. *See, e.g., Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72-73 (1996) (holding that Congress lacked the authority under the Indian Commerce Clause to waive the states' Eleventh Amendment immunity); *see also New Mexico v. Department of Interior*, 854 F.3d 1207 (10th Cir. 2017) (concluding that the U.S. Department of Interior did not have authority to issue regulations providing an alternative remedial scheme when a state asserted sovereign immunity as a defense). As a result, the State and its officials retain Eleventh Amendment immunity from claims by the Tribes arising under IGRA.

The Tribes cannot rely upon *Ex parte Young* because there is no violation of federal law to enjoin. *See Verizon Md. Inc. v. PSC*, 535 U.S. 635, 645 (2002) (*Ex parte Young* only applies to enjoin an ongoing violation of federal law).[2] The Defendants have not taken, and are not taking, any specific actions against the Tribes, as required to satisfy *Ex parte Young*. *See generally* 2d Am. Compl.; Exs A-J. Rather than take any

---

[2] The Tribes appear to assert only the *Ex parte Young* exception to sovereign immunity, and not waiver. 2d Am. Compl. ¶¶ 28-29, 91. In any case, waiver does not apply. The Southern Ute Indian Tribe's Compact does not contain any waiver of immunity. *See generally id*., Ex. A-1. The Ute Mountain Ute Tribe's Compact contains only a limited waiver of the State's immunity "for the limited purpose of enforcing the terms of this Compact." *Id*., Ex. A-2 at 48 (internal p. 42). The Tribes point to Section 3(a) of the Ute Mountain Ute Tribe's Compact, which states that "[t]he Tribal Gaming Operation may operate in its Gaming Facilities, subject to the provisions of this Compact, any or all Class III gaming that is permitted within the State…" *Id*. ¶ 4; Ex. A-2 at 13-14 (internal pp.7-8). As discussed *infra* at 6-8, both IGRA and the Compacts only pertain to gaming activity that occurs on Indian lands, and not wagers placed by bettors off-reservation.

enforcement action against the Tribes, the State has consistently engaged in meaningful dialogue with the Tribes to *avoid* any such conflict. *See, e.g.*, *id.* ¶¶ 53-55, 60-63, 67, 76-77, 81-82; Exs. C, F, G, J. Even the June 2020 letters to non-tribal sportsbook operators attached to the Tribes' complaint, which are from the State's prior Gaming Director, indicate a desire to avoid any enforcement action. *Id.*, Ex. H at 3 (internal p. 2) ("Ideally, our goal is to avoid any legal action with respect to your activity that the Division considers unlawful and resolve these issues amicably."); Ex. I at 3 (internal p. 2) (same). In fact, neither Tribe currently accepts sports betting wagers from outside their reservations, from which any theoretical State action could arise. *Id.* ¶¶ 66, 85, 94, 106-07. In short, there is no ongoing State action to enjoin.

More fundamentally, the Defendants' legal position is in line with federal law. As Justice Kagan declared in *Bay Mills*, 572 U.S. at 795, "everything—literally everything—in IGRA" pertains to "gaming on Indian lands, and nowhere else."[3] [4] The entirety of binding and persuasive authority indicates that a bet placed off-reservation, even if it is received by servers on Indian lands, does not constitute gaming on Indian lands.

---

[3] As relevant here, the Court in *Bay Mills* resolved whether Congress had waived a tribe's immunity from suit brought by the state seeking to enjoin the tribe's illegal gaming activity outside Indian lands. 572 U.S. at 791. The Court's holding—that Congress did not expressly provide this waiver because IGRA is limited to gaming activity that occurs *on the reservation*—depended upon an interpretation of the term "class III gaming activity" in IGRA, *id.* at 791-92 ("The 'gaming activit[y]' is (once again) the gambling."), which is also at the heart of the present dispute. *See infra* at 6-8. Defendants assume for this Motion, without admitting, that sports betting is "class III gaming" under IGRA.

[4] "Indian lands" as applicable here, is synonymous with the Tribes' reservation lands. *See* 25 U.S.C. § 2703(4); *see also* 2d Am. Compl. ¶¶ 15-16, 21-22, 51 n.7, 89.

The U.S. Supreme Court has articulated that, for the purposes of IGRA, gaming activity occurs where the bettor is located. *Bay Mills*, 572 U.S. at 792 ("gaming activity is the gambling in the poker hall, not the proceedings of the off-site administrative authority"). In applying *Bay Mills*, the Tenth Circuit has explained that, "[t]he Court's analysis in *Bay Mills* leads us to the clear conclusion that Class III gaming activity relates only to activities actually involved in the playing of the game, and not activities occurring in proximity to, but not inextricably intertwined with, the betting of chips, the folding of a hand, or suchlike." *Navajo Nation v. Dalley*, 896 F.3d 1196, 1207 (10th Cir. 2018).[5] Interpreting the term "gaming activity" as referring to "activities actually involved in the *playing* of the game," the Tenth Circuit explicitly referred to the placement of the bet ("the betting of the chips"), and not just the acceptance of the wager, as constituting gaming activity. *Id.* (emphasis in original). The Ninth Circuit has similarly found that when a bettor is located outside of Indian lands, online gaming activity is taking place at that location for purposes of jurisdiction under IGRA. *California v. Iipay Nation of Santa Ysabel*, 898 F.3d 960, 967 (9th Cir. 2018). The National Indian Gaming Commission has also long been of the view that online gaming activity where a bettor is located "off-reservation" is not authorized by IGRA. Kevin K. Washburn, Nat'l Indian Gaming Comm'n, Opinion Letter on WIN Sports Betting Game (March 13, 2001), *available at* https://bit.ly/3eeoal8 ("The use of the Internet, even though the computer server may be

---

[5] Courts in the Tenth Circuit are "bound to follow both the holding and the reasoning, even if dicta, of the Supreme Court." *Dalley*, 896 F.3d at 1208 n.6.

located on Indian lands, would constitute off-reservation gaming to the extent any of the players were located off of Indian lands.").

Under these clear precedents, the Tribes' acceptance of off-reservation sports betting wagers, even if received by servers on the reservation, does not constitute gaming activity governed by IGRA. [6] [7] Instead, generally applicable state law applies, even to the Tribes. *See Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148-49 (1973) ("Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to non-discriminatory state law otherwise applicable to all citizens of the State."). In 2019, the Colorado General Assembly and voters approved sports betting in the context of a highly regulated system. *See* HB 19-1327, codified at C.R.S. §§ 44-30-1501 *et seq.*; C.R.S. § 44-30-102(3)(e). Under state law, sports betting operators must hold a valid state license. C.R.S. §§ 18-10-102(2)(g), 44-30-1511(1)(c). In addition, Colorado voters specifically approved taxes on operators

---

[6] While this Court need not concern itself with whether this view is consistent with state law, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104-06 (1984), it is. A formal Attorney General opinion concluded that "[u]nder Colorado law, a bet is placed where the person placing the bet is located." Att'y Gen. Op. No. 13-02 (Dec. 13, 2013), *available at* https://tinyurl.com/mvj2dc9d (discussing limited gaming under Colo. Const, art. XVIII, § 9). Colorado law requires that "[a]ll bets authorized under this part 15 must be *initiated, received, and otherwise made* within Colorado unless otherwise determined by the division in accordance with applicable federal and state laws." C.R.S. § 44-30-1506(6) (emphasis added). The Tribes' selective discussion of Colorado law, as being only focused on the acceptance of bets by operators, 2d Am. Compl. ¶¶ 14, 50, ignores these key authorities. The Tribe is also incorrect in its state constitutional analysis, *id.* ¶ 51, because sports betting is not limited gaming. *See* Colo. Const, art. XVIII, § 9(4)(b).

[7] Each of the prior verified complaints classified the gaming activity at issue as "off-reservation". Compl. [ECF no. 2] ¶¶ 3, 5, 18; Am. Compl. [ECF no. 22] ¶ 90.

at a rate of ten percent of net sports betting proceeds, which, after administrative costs and a hold-harmless fund, go to fund water projects in the state. *Id*. §§ 44-30-1508(1), 44-30-1509, 37-60-123.3.[8]

Thus, the State has a special sovereignty interest in collection of these taxes as well as the strict regulation of gaming operations that directly impact its residents. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 282 (1997) (declining to apply *Ex parte Young*'s exception to Eleventh Amendment sovereign immunity if doing so would implicate a state's special sovereignty interests); *id*. (suit "seek[ing], in effect, a determination that the lands in question are not even within the regulatory jurisdiction of the State" would "bar the State's principal officers from exercising their governmental powers and authority over the disputed lands and waters").[9]

---

[8] The State has proposed alternatives to direct taxation of the Tribes in recognition of the longstanding government-to-government relationships. 2d Am. Compl. ¶ 76; Ex. G.

[9] Although the Tenth Circuit has declined to apply the "special sovereignty interest" exception from *Coeur d'Alene* as a threshold consideration under the *Ex parte Young* analysis, *see Tarrant Reg'l Water Dist. v. Sevenoaks*, 545 F.3d 906, 912 (10th Cir. 2008), despite earlier cases recognizing this exception, *e.g. ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1194 (10th Cir. 1998), the U.S. Supreme Court has not disavowed this precedent and other circuits have recognized its continuing validity, though some have narrowed its application to actions in the nature of quiet title. *See Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 257 (2011) (recognizing exception); *id.* at 268 (Roberts, C.J. and Alito, J., dissenting) (same); *Seneca Nation v. Hochul*, 58 F.4th 664, 672-73 (2d Cir. 2023) (recognizing as narrow but declining to apply exception); *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 508 (3d Cir. 2001) (recognizing exception to *Ex parte Young* from *Coeur D'Alene* but applying separate exception instead); *Virginia v. Reinhard*, 568 F.3d 110, 119 (4th Cir. 2009) (recognizing and applying *Coeur D'Alene* exception) *rev'd and remanded sub nom. Stewart, supra*; *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 739 (5th Cir. 2020) (recognizing as

The Tribes cite *West Flagler Associates*, 71 F.4th 1059, for the proposition that a state may agree to allow a tribe to accept remote wagers from anywhere in the state. 2d Am. Compl. ¶ 38. In that case, the panel upheld the Department of Interior's approval of a compact between the Seminole Tribe and the State of Florida that "deemed" a bet made by a player anywhere within the state and received by the tribe's mobile app to take place exclusively on Indian lands for the purpose of jurisdiction. *See* 71 F.4th at 1066 (quoting key compact language). Specifically, the panel concluded that "IGRA does not *prohibit* a gaming compact" from containing such a provision. *Id.* at 1062.[10] And, concurrent with approval of the compact, Florida had amended its law to provide that *as a matter of Florida law*, a sports wager would be deemed to occur on Indian lands if placed with a compacting tribe. *Id.* at 1063; Fla. Stat. § 285.710(13)(b)(7).

---

narrow but declining to apply exception); *MacDonald v. Vill. of Northport, Mich.*, 164 F.3d 964, 972 (6th Cir. 1999) (applying *Coeur D'Alene* and finding *Ex parte Young* did not apply); *MCI Telecomm. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 347-48 (7th Cir. 2000) (recognizing but declining to apply exception); *but see Ind. Prot. & Advoc. Servs. v. Ind. Fam. & Soc. Servs. Admin.*, 603 F.3d 365, 372 (7th Cir. 2010) (following Tenth Circuit approach in *Tarrant*); *Anderson-Tully Co. v. McDaniel*, 571 F.3d 760, 763-64 (8th Cir. 2009) (applying *Coeur D'Alene* and finding *Ex parte Young* did not apply); *Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1072-74 (9th Cir. 2014) (same); *Muscogee (Creek) Nation v. Rollin*, 119 F.4th 881, 889-91 (11th Cir. 2024) (recognizing as narrow, but declining to apply *Coeur D'Alene* exception); *Vann v. Kempthorne*, 534 F.3d 741, 756 (D.C. Cir. 2008) (recognizing but not applying exception).

[10] For purposes of this Motion, Defendants assume without admitting that this case was correctly decided. *But see W. Flagler Assocs., Ltd. v. Haaland*, 144 S. Ct. 10 (2023) (Kavanaugh, J.) ("If the compact authorized the Tribe to conduct off-reservation gaming operations, either directly or by deeming off-reservation gaming operations to somehow be on-reservation, then the compact would likely violate the Indian Gaming Regulatory Act, as the District Court explained."); *Dalley*, 896 F.3d at 1205 n.4 ("the negotiated terms of the Compact cannot exceed what is authorized by [ ] IGRA") (citation omitted).

Following the *West Flagler* opinion, the Department of Interior updated its regulations to permit statewide remote wagering on Indian lands where "[s]tate law and the compact or amendment deem the gaming to take place, for the purposes of State and Tribal law, on the Tribe's Indian lands where the server accepting the wagers is located" and other conditions are met. 25 C.F.R. § 293.26.[11]

Colorado, however, has not enacted a law that "deems" remote sports wagering to take place on Indian lands.[12] Additionally, the 1995 Compacts do not say anything about internet sports betting or online gaming generally, much less include language "deeming" certain remote wagers to occur on the Tribes' land for purposes of allocating jurisdiction. *See generally* 2d Am. Compl., Exs. A-1, A-2. On the contrary, both Compacts explicitly discuss gaming in facilities on the reservations.[13] There is no

---

[11] Two Kansas tribes have recently amended their compacts with the state of Kansas to include similar "deeming" language. *See* Prairie Band Pottawatomi Nation-Kansas Compact Am. (July 11, 2023), *available at* https://tinyurl.com/mrxvwn37; Jason B. Long, Senior Assistant Revisor, *A Summary and the Implications of W. Flagler Assoc., Ltd. v. Haaland* at 4–5 (Sept. 11, 2024), *available at* https://tinyurl.com/mp9s3xt2.

[12] As noted *supra* n. 6, Colorado law also does not consider gaming activity to occur solely at the location the bet is accepted.

[13] *See, e.g.*, 2d Am. Compl. Ex. A-1 § 1 ("The purpose of this Compact is to establish the terms governing the conduct of Class III Gaming on the Southern Ute Indian Reservation."); *id*. § 2(i) ("'Gaming Facility' means the buildings, rooms or areas in which Tribal Gaming is conducted."); *id*. § 2(w) ("'Tribal Gaming' means any gaming that is conducted on the Reservation pursuant to this Compact."); *id*. § 3(c) ("The Tribe may establish one or more Gaming Facilities on the Reservation."); Compl. Ex. A-2 at 8 (internal p. 2) (purposes and objectives include "1. To provide for the regulation of Class III Gaming on Indian Lands consistent with the Act"); *id*. § 2.G. ("'Gaming Facility or Facilities' means the room or rooms on Indian Lands in which Class III gaming as

dispute that the Tribes can offer sports betting to patrons located in those facilities. In fact, the State has never opposed the Tribes' acceptance of remote wagers for sports betting from anywhere on tribal lands. *See, e.g.,* 2d Am. Compl., Ex. F at 4; Ex. H; Ex. I.[14] In fact, the State requires its licensed operators to geofence around the Tribes' reservations. 1 C.C.R. 207-2, Rule 7.10; Colo. Div. of Gaming, Industry Bulletin No. 3 (Mar. 20, 2020), *available at* https://tinyurl.com/3p9x8n87.

In sum, Defendants are not violating federal law because the gaming activity at the heart of the Tribes' complaint (off-reservation wagers by Colorado bettors, regardless of where those bets are received) is not governed by IGRA but is governed by State law. The Tribes and the State have not reached an agreement to the contrary following *West Flagler* or the updated Department of Interior regulations. Because there is no ongoing state action, and because Defendants are not violating federal law, the *Ex parte Young* exception to Eleventh Amendment immunity does not apply. This is true for the Tribes' claims for injunctive as well as declaratory relief. *See Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1215 (10th Cir. 2022). The case must be dismissed for lack of jurisdiction under Rule 12(b)(1).

## II.     The Tribes have failed to state a claim under IGRA.

The case should also, and alternatively, be dismissed under Rule 12(b)(6).

---

authorized by this Compact is conducted."); *id*. § 3.A. ("The Tribal Gaming Operation may operate in its Gaming Facilities, subject to the provisions of this Compact...").

[14] Defendants do not dispute that the Tribes are highly sophisticated and capable of regulating their own gaming enterprises as set forth in the 1995 Compacts.

IGRA provides for only three causes of action, none of which apply here. *See* 25 U.S.C. § 2710(d)(7)(A) (discussing three causes of action, two of which are available to tribes).[15] The Ninth and Eleventh Circuits have concluded that these causes of action provide the exclusive relief under IGRA. *Accord Florida v. Seminole Tribe of Fla.,* 181 F.3d 1237, 1248-49 (11th Cir. 1999) ("The existence of these various express remedies is a clear signal that we should not read into IGRA the implied right of action asserted by the State."); *Hein v. Capitan Grande Band of Diegueno Mission Indians*, 201 F.3d 1256, 1260 (9th Cir. 2000) ("[W]here IGRA creates a private cause of action, it does so explicitly."). The Seventh Circuit has similarly held that parties do not raise a federal question under IGRA unless one of these causes of action is triggered. *See Wisconsin v. Ho-Chunk Nation*, 463 F.3d 655, 661 (7th Cir. 2006), *abrogated on other grounds by Vaden v. Discover Bank*, 556 U.S. 49 (2009) ("The question here is: since the IGRA enables and regulates contracts between tribes and the states, does any dispute arising from the resulting compact present a question under the IGRA? We think not.").

Even if the Tribes could theoretically assert a right to equitable relief under IGRA that was outside of one of the exclusive statutory remedies, it would fail for the reasons

---

[15] 25 U.S.C. § 2710(d)(7)(A)(i) does not apply because "[t]he Tribes are not asserting that Colorado has engaged in bad faith negotiations around drafting a new compact or modifying the existing compacts." 2d Am. Compl. ¶ 97. Indeed, that would be inconsistent with the Tribes' demand to enforce the existing Compacts. *E.g., id*. ¶¶ 3-4, 8. 25 U.S.C. § 2710(d)(7)(A)(ii) does not apply because the Tribes are not seeking to enjoin a Class III gaming activity on Indian lands, let alone asserting that any such gaming is currently being conducted in violation of the Compacts. The Tribes seek an order to allow off-reservation gaming, not to enjoin on-reservation gaming.

addressed in detail above. *Supra* at 5-12.[16]

### III. The Tribes have failed to state a claim under the 1995 Compacts.

The 1995 Compacts do not provide any separate grounds for relief to the Tribes. A compact may include provisions related to breach of contract including waivers of sovereign immunity. 25 U.S.C. § 2710(d)(3)(C)(v); *Bay Mills*, 572 U.S. at 796. Both Compacts provide that "[i]n addition to any remedies provided in the Act[,] or otherwise available under Federal [l]aw," either party can demand arbitration. 2d Am. Compl., Ex. A-1 at 31-32 (internal p. 29-30); Ex. A-2 at 40 (internal p. 34). As discussed above, the Tribe cannot bring a cause of action or otherwise claim relief under IGRA. The Tribes have not demanded arbitration or identified other remedies available under federal law.

With respect to the 1995 Compacts themselves, as discussed above at 11-12, their terms pertain only to gaming activity on the reservation. Here, the Tribes seek authority to accept sports betting wagers placed outside their reservations, and thus the 1995 Compacts do not plausibly provide a basis for relief.

### IV. The claims must also, and alternatively, be dismissed as untimely.

IGRA does not specify a statute of limitations, and therefore the most closely analogous state statute of limitations applies. *See Pauma Band of Luiseno Mission Indians of Pauma & Yuima Reservation v. California*, No. 16-cv-01713-BAS-JMA, 2017

---

[16] The Tribes do not appear to plead a claim based on the Court's inherent equitable jurisdiction, but instead they directly assert that the claims are based on IGRA and the Compact. 2d Am. Compl. at pp. 30-34.

WL 1166426, at *5 (S.D. Cal. Mar. 29, 2017) (citing *Papa v. United States*, 281 F.3d 1004, 1011-12 (9th Cir. 2002)); *see also Stockbridge-Munsee Cmty. v. Wisconsin*, 299 F. Supp. 3d 1026, 1030-31 (W.D. Wis. 2017), *aff'd*, 922 F.3d 818 (7th Cir. 2019) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 (1983)). Equitable claims are subject to laches and "absent extraordinary circumstances, courts will analyze a laches defense by analogy to the statute of limitations applicable to an action at law of like character." *In re Behrends*, No. AP 14-1377 EEB, 2017 WL 4513071, at *24 (Bankr. D. Colo. Apr. 10, 2017) (citations omitted); *see also Grynberg v. Total S.A.*, 538 F.3d 1336, 1354 (10th Cir. 2008). Therefore, Colorado's three-year statute of limitations for contract actions, C.R.S. § 13-80-101(1)(a), applies to claims under the 1995 Compacts. *See also Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1556 (10th Cir. 1997) (citation omitted) ("A compact is a form of contract."); *Stockbridge-Munsee Cmty.*, 922 F.3d at 823-24. In addition, Colorado's two-year general statute of limitations applicable to "[a]ll actions upon liability created by a federal statute where no period of limitation is provided in said federal statute," C.R.S. § 13-80-102(1)(g), applies to claims arising under IGRA.

The Tribes bring their claims outside of both windows. The prior Gaming Director sent his letters to the non-tribal sportsbook operators in June 2020. 2d Am. Compl., Ex. H; Ex. I. According to the Second Amended Complaint, the State first articulated its position directly to the Tribes in April 2020, when Director Hartman "suggested for the first time that tribal internet sports betting was limited to bets initiated and accepted within [] the Reservation boundaries." *Id*. ¶ 60; *see also id.*, Ex. F. The Tribes were

15

certainly on notice as of May 2021 that the State viewed tribal receipt of sports betting wagers outside of reservation boundaries to be subject to its jurisdiction. *Id.* ¶¶ 76-80; *id.*, Ex. G. The original complaint here was not filed until July 9, 2024.[17] Therefore, this case was brought more than three years from when the claims accrued. *See Newcomb v. Ingle*, 827 F.2d 675, 678 (10th Cir.1987) (federal law governs when federal cause of action accrues); *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994) (claim accrues "when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the case for lack of jurisdiction and failure to state a claim. To the extent that the case is dismissed for failure to state a claim, Defendants respectfully request that it be dismissed with prejudice because the Tribes cannot cure those defects by further amending the complaint. *Brereton*, 434 F.3d at 1219.

---

[17] The U.S. Supreme Court's denial of *certiorari* in *West Flagler Associates, Ltd. v. Haaland*, 71 F.4th 1059 (D.C. Cir. 2023), *cert. denied*, 144 S.Ct. 2671 (2024), appears to correspond to the timing of the complaint. Defendants are not aware of any rule that would extend the statute of limitations in these circumstances.

DATED: April 4, 2025.

PHILIP J. WEISER
Attorney General

s/ Lily E. Nierenberg
LILY E. NIERENBERG*
Assistant Attorney General II
Attorney for Governor Jared Polis

Colorado Department of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: 720-508-6851
Email: Lily.Nierenberg@coag.gov
*Counsel of Record

s/ Torrey Samson
TORREY SAMSON*
Senior Assistant Attorney General
Attorney for Gaming Director Christopher Schroder

Colorado Department of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 8th Floor
Denver, Colorado 80203
Telephone: 720-508-6344
Email:  Torrey.Samson@coag.gov
*Counsel of Record